UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jose G., <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:21-CV-01434-TOF <br><br><br> August 23, 2022 |

## RULING ON PENDING MOTIONS

The Plaintiff, Jose G.,[1] brought this action for judicial review of a decision by the Social Security Administration ("SSA"), rejecting his application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act. (Compl., ECF No. 1.) The parties agree that the Administrative Law Judge ("ALJ") erred, but they disagree on the remedy. The Acting Commissioner of Social Security ("Commissioner") says that the case should be remanded for further administrative proceedings (Def.'s Mot. for J., ECF No. 14, at 1), but the Plaintiff says that the ALJ's decision should be reversed and the case remanded solely for a calculation and award of benefits. (Pl.'s Resp., ECF No. 15, at 1.)

For the reasons that follow, the Court agrees with the Commissioner. As set forth more fully in Section III, the Commissioner's motion will be granted and the Plaintiff's motion will be denied.

---

[1] Pursuant to Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

I.   **BACKGROUND**

The Plaintiff applied for disability insurance benefits on July 24, 2019, and for supplemental security income on September 17, 2019.  (R. 22.)  When asked to list his disabling conditions in his application, he identified only arthritis.  (R. 112.)  An SSA claims examiner noticed a history of traumatic brain injury ("TBI") in his medical record, however, and inquired about it.  (R. 117.)  The Plaintiff responded that his "history of head trauma" did "not affect his ability to work," but the SSA nonetheless referred him to three consultative examinations.  (R. 117, 674, 679, 683.)  Those examinations resulted in diagnoses of TBI, seizures, post-traumatic stress disorder ("PTSD") and neurocognitive disorder, among other conditions.  (R. 677, 682.)

After the examinations, the SSA concluded that the Plaintiff was "capable of simple work" in spite of his health issues.  (R. 122.)  It noted that "by his own account, [the Plaintiff] is able to perform basic maintenance, focus and reason sufficiently to pay bills, and . . . relate positively and find his way to appointment and through his neighborhood."  (*Id.*)  For these reasons and others, it denied his claims at the initial level on April 20, 2020 (R. 168-72, 173-77), and at the reconsideration level on June 23, 2020.  (R. 180-82, 183-87.)

The Plaintiff then requested a hearing before an ALJ.  (R. 201-02.)  Judge I.K. Harrington held a hearing on December 16, 2020, at which the Plaintiff was represented by counsel.  (R. 41-93.)  The Plaintiff testified in response to questions from both the ALJ and his attorney, and the ALJ also heard testimony from a vocational expert ("VE"), Sherry Plant.  (*Id.*)

On December 23, 2020, the ALJ issued an unfavorable decision.  (R. 19-35.)  ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims, *see* discussion, Section II *infra*, and Judge Harrington's written decision followed that format.  She began by finding that although the Plaintiff had worked after his claimed disability onset date, his

earnings were too low to "constitute substantial gainful activity" for purposes of Step One of the five-step process. (R. 25.) At Step Two, she found that the Plaintiff suffered from the severe impairments of epilepsy, neurocognitive disorder, trauma and stressor related disorder, anxiety disorder, neurodevelopmental disorder, and intellectual disorder. (*Id.*) At Step Three, she concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. 404, Subpt. P, Appendix 1. (R. 25-28.) She then determined that, notwithstanding his impairments, the Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes, or scaffolds, and must avoid exposure to unprotected heights, dangerous moving machinery, driving motor vehicles, or operating heavy machinery; simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few work place changes; can self pace without strict adherence to time or production requirements; occasional interaction with the public, coworkers, and supervisors; and can read at a grade 1 level.

(R. 28.) At Step Four, the ALJ found that the Plaintiff was unable to perform any of his past relevant work. (R. 33.)

Finally, at Step Five, the ALJ relied on VE Plant's testimony in considering whether there was a significant number of jobs in the national economy that the Plaintiff could perform. The VE testified that a person with the Plaintiff's RFC could perform the jobs of "racker" and "sandwich board carrier," of which there are 743 and 2,318 jobs, respectively, in the national economy. (R. 84.) Evidently concluding that 3,061 was a significant number of jobs, the ALJ held that "the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 35.) She then held that "[a] finding of 'not disabled' is therefore appropriate." (*Id.*)

The Appeals Council denied review on August 30, 2021 (R. 1-7), and the Plaintiff filed this action on October 29, 2021.  (Compl., ECF No. 1.)  On December 8, 2021, the Commissioner denied the allegations of the complaint by filing the Certified Administrative Record.  (ECF No. 10; *see also* Standing Scheduling Order, ECF No. 4, at 2 (stating that, in the District of Connecticut, the filing of administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)  On February 5, 2022, the Plaintiff filed a Motion for Order Reversing Commissioner's Decision.  (ECF No. 12.)  He asked that the Court "reverse the decision of the Commissioner," and that his "case be remanded for calculation of benefits."  (*Id.*)  "[I]n the alternative," he sought a new "hearing on the issue of whether [he] is disabled."  (*Id.*)

The Commissioner then filed a motion to reverse the underlying decision and "remand[] this case . . . for further proceedings."  (ECF No. 14.)  In her accompanying memorandum of law, she explained that "[t]he ALJ's decision did not properly discuss the supportability of medical opinions of the consultative examiners in the record under the agency's new medical rules of evidence."  (Memo. of L., ECF No. 14-1, at 1.)  She added that the ALJ also "failed to resolve an issue with the prior administrative medical findings" – specifically, the ALJ did not adequately explain her evaluation of the IQ test that had been conducted by one of the three consultative examiners, and did not properly evaluate the Plaintiff's reading level.  (*Id.* at 1-2.)  The Commissioner therefore urges the Court to remand the case to the SSA "for a new decision that evaluates the medical opinion evidence under the new medical evidence regulations; determines the claimant's educational category, considering whether he is illiterate, and obtains additional vocational evidence."  (*Id.* at 2.)

Although the Plaintiff had initially sought a new hearing as an alternative form of relief (ECF No. 12, at 1), he now objects to the Commissioner's motion and asks the Court to "revers[e]

4

the decision . . . solely for calculation of benefits, without remanding the cause for a rehearing." (Memo. in Supp. of Pl.'s Resp., ECF No. 15-1, at 1.)  He notes that the ALJ determined that he had met his burden of proof at Steps One through Four of the five-step sequential evaluation process. (*Id.*)  He argues that the Commissioner is "asking for a blank slate to further develop the record," and contends that she should not be permitted to do so where "[t]here is persuasive proof that [he] is disabled." (*Id.* at 2.)

The Commissioner did not file a reply brief in support of her motion, and her time for doing so has passed.  The parties' motions are therefore ripe for decision.

## II. DISCUSSION

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings." *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1.  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of his "past relevant work." *McIntyre*, 758 F.3d at 150.  And at Step Five, the ALJ considers "whether there are significant numbers of jobs in the

national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four, but at Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

If a claimant believes in good faith that the ALJ erred, he may bring a civil action seeking review by a federal court. 42 U.S.C. § 405(g). In such cases, the district court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). The court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) ("A district court may set aside the Commissioner's decision that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error.") (internal quotation marks omitted). When the court determines that the Commissioner's decision suffers from one of these defects, it may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)). In this case, the parties agree that the ALJ's decision is defective. They disagree on the question of whether the case should be remanded for a rehearing, or for a calculation and award of benefits.

"[A] remand solely for the calculation of benefits is an extraordinary action[.]" *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 279 (S.D.N.Y. 2006) (quotation marks and citation omitted). It is appropriate "only where the record 'provides persuasive evidence of total disability that would render any further proceedings pointless.'" *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000)) (brackets omitted). "Persuasive proof" of disability exits when there is "no apparent basis to conclude" that additional evidence "might

support the Commissioner's decision." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999). The standard is a "demanding" one, "reserved for cases where the record conclusively establishes both a total disability and an inability to work." *Lori H. v. Kijakazi*, No. 3:20-cv-1303 (DJS), 2022 WL 675702, at *3 (N.D.N.Y. Mar. 7, 2022). "This is because 'genuine conflicts in the medical evidence are for the Commissioner to resolve.'" *Id.* (quoting *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980)). The decision of whether to remand for a rehearing or for a calculation of benefits rests within the sound discretion of the trial court. *Butts*, 388 F.3d at 385.

In this case, the Plaintiff's position is not without its appeal. "The Second Circuit has consistently emphasized the importance of the Commissioner's burden to support her step-five determination with substantial evidence[.]" *Torres v. Colvin*, No. 3:16-cv-809 (JAM), 2017 WL 1734020, at *3 (D. Conn. May 3, 2017) (quoting *Cabreja v. Colvin*, No. 14-CV-4658 (VSB), 2015 WL 6503824 at *17 (S.D.N.Y. Oct. 27, 2015)). When the claimant meets his burden at Steps One through Four, but the Commissioner fails to meet her burden at Step Five, she should not lightly be given another opportunity to do so. *See, e.g., Gilberto F.E. v. Saul*, 470 F. Supp. 3d 1127, 1133 (C.D. Cal. 2020) ("Simply because the Commissioner failed to meet the burden of showing other work at Step 5 does [not] give rise to a right to remand and 'do over' hearing before the ALJ."). Here, the ALJ found that the Plaintiff met his burden through Step Four, and some courts in this district have exercised their discretion to remand for calculation of benefits under those circumstances. *E.g., Torres*, 2017 WL 1734020, at *4; *Nadeau v. Colvin*, No. 3:14-cv-1634 (WIG), 2015 WL 10687479, at *3 (D. Conn. Oct. 5, 2015).

Yet the Second Circuit has also stressed that there should be "persuasive proof of disability" before ordering a calculation and award of benefits, *Selian*, 708 F.3d at 420, *Williams*, 204 F.3d at 50, and the Court observes no such proof in this case. The Plaintiff asserts that proof can be found

in his "lifelong cognitive issues" and "brain trauma" (Pl.'s Resp., ECF No. 15-1, at 6), and to be sure, the record reflects both. (*See, e.g.,* R. 367 (juvenile IQ test score of 75 "which indicated overall functioning to be within the Borderline range (5th [percentile])"); R. 426-30 (radiological report documenting hemorrhagic contusion to frontal lobe, comminuted fracture of skull and subdural hematoma after 2016 fall); R. 683 (adult IQ test score of 45).) But it also contains mental status examination reports reflecting normal attention and concentration, intact memory, and a normal capacity for abstract reasoning (R. 723), along with thought processes, thought content and "attention/concentration" that were "within normal limits." (R. 795, 802, 806, 811, 816.) The Plaintiff also observes "persuasive proof" of disability in his low level of reading skill, and here too, there is evidence on his side. (*E.g.*, R. 683-89 (psychological evaluation stating that Plaintiff reads at the first-grade level and "does not have functional reading skills").) But the record contains contrary evidence on this point as well. The Plaintiff testified at the hearing that he completed the seventh grade (R. 49); he previously told the SSA that he had gone as far as the twelfth grade (R. 100); he told a consultative medical examiner that his "[l]eisure activities include . . . reading" (R. 675); and he filled out a disability questionnaire in his own hand. (R. 286.) Moreover, the record reflects that the Plaintiff continued to work even after his claimed disability onset date, although his wages were below the level of substantial gainful activity. (R. 264) (wage records reflecting that Plaintiff worked for two different staffing agencies in the second and third quarters of 2019); *cf. also Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-cv-10, 2020 WL 109007, at *9 (N.D.N.Y. Jan. 9, 2020) (stating that the disability analysis "can consider work performed by the claimant, even if that work falls below the level of substantial gainful activity, because it might suggest that the plaintiff can perform at a more demanding level"). In short, this is not a case in which "the record conclusively establishes both a total disability and an inability

to work." *Lori H.*, 2022 WL 675702, at *3 (N.D.N.Y. Mar. 7, 2022); *cf. Loretta C. v. Kijakazi*, No. 3:21-cv-922 (RAR), 2022 WL 3545630, at * (D. Conn. Aug. 18, 2022) (declining to order a calculation of benefits).

Moreover, in the extraordinary instances in which courts have remanded solely for calculation of benefits, there typically has been a long delay in the SSA's adjudication of the claimant's claim. "The 'no purpose' remand is grounded in equitable considerations and is often deployed where prior administrative proceedings and litigation have consumed an inordinate length of time." *Wayne M. v. Saul*, No. 3:20-cv-465 (SALM), 2021 WL 1399777, at *19 (D. Conn. Apr. 14, 2021) (quoting *Munford v. Apfel*, No. 97CV-05270 (HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998)). In *Torres*, for example, the court remanded for calculation of benefits in part because the "Plaintiffs claim has been pending for more than seven years and was already remanded by the District Court once before." 2017 WL 1734020, at *4. The court was "not persuaded that the Commissioner deserves a third opportunity to carry her" Step Five burden. *Id.* Similarly, in *Marble v. Barnhart* the court remanded solely for calculation of benefits in part because the claimant's "claim [was] ten years old, almost to the day." No. 04-CV-4899, 2006 WL 407551, at *3 (E.D.N.Y. Feb. 17, 2006); *accord Nadeau*, 2015 WL 10687479, at *3 ("The Commissioner has already had two opportunities to meet her step five burden[.]") In this case, by contrast, there has been no prior remand or unusual delay.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that the Plaintiff's case should be remanded for further administrative proceedings. Accordingly, the Commissioner's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) With Reversal and Remand of the Cause to the Defendant (ECF No. 14) is **GRANTED**. The Plaintiff's Motion for an Order Reversing the

Commissioner's Decision (ECF No. 12) is **DENIED** to the extent that it seeks an order remanding for calculation of benefits, and **DENIED AS MOOT** to the extent that it seeks an order remanding for a rehearing as an alternative form of relief.  The Plaintiff's case is **ORDERED REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion.  The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiff pursuant to Fed. R. Civ. P. 58, and to close the case.

This is not a recommended ruling.  The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 14.)  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

So ordered this 23rd day of August, 2022 , at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge